***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Kemper Risk Management Services as the third-party administrator.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff contracted a compensable occupational disease, bilateral carpal tunnel syndrome, on or about December 5, 1997.
5. Plaintiff's average weekly wage was $410.48, which yields a compensation rate of $273.66 per week, based upon the Form 22.
6. The issues for determination are:
 a. Whether plaintiff's myofascial pain syndrome of her neck and shoulders are compensable.
 b. Whether plaintiff has sustained a permanent impairment as a result of the admittedly compensable bilateral carpal tunnel syndrome.
 c. Whether plaintiff refused to accept suitable employment.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 52 years old and had been employed as a packing inspector since 1975. Baxter International manufactures IV solutions for hospital use. Plaintiff's duties included inspecting and packing three-liter IV bags from a conveyor belt to boxes. She also inspected and packed one-liter bags, as needed.
2. In the fall of 1997, plaintiff began to experience bilateral hand pain at her wrist area. She reported these symptoms to the plant nurses, who provided wristbands. They later referred her to Dr. Joseph Chung. By January of 1998, Dr. Chung referred plaintiff to Dr. Russell Flint, a surgeon in Spruce Pine.
3. On January 19, 1998, Dr. Flint performed right carpal tunnel release surgery on plaintiff, with the left wrist surgery being done on March 5, 1998. Dr. Flint ordered physical therapy and occupational therapy.
4. On or about May 18, 1998, plaintiff returned to work, after which she experienced soreness and burning in the left hand.
Plaintiff reported these symptoms to her physical therapist on May 20, 1998. Plaintiff was unable to attend therapy on May 25, 1998, due to left hand pain and edema.
5. Plaintiff attempted to return to work on June 1, 1998, but was unable to work due to left hand pain. By June 3, 1998, the therapist found that plaintiff's condition had deteriorated. Dr. Flint authorized two additional weeks of therapy. By late June of 1998, plaintiff was experiencing cramping in her left hand. The therapist referred plaintiff back to Dr. Flint for follow-up.
6. Although plaintiff continued in therapy, by August 3, 1998, she had begun to complain of burning pain to her shoulder.
7. On August 12, 1998, Dr. Andrea Stutesman examined plaintiff.
8. By September 1, 1998, plaintiff's left arm was becoming clammy and sweaty during therapy sessions. The therapist suspected circulatory problems or reflex sympathetic dystrophy.
9. Dr. Stutesman's office instructed the therapist to continue therapy twice a week, after which plaintiff should return to light duty work. On September 4, 1998, plaintiff completed therapy. Dr. Stutesman requested a discharge summary.
10. On September 1, 1998, plaintiff attempted to return to work; however, she was unable to reach overhead to pull the IV bags from the conveyor. On September 2, 1998, plaintiff reported the arm symptoms to the plant nurse who instructed her to go home.
11. Although the plaintiff advised her employer of the arm difficulties she had experienced upon her return to work, the defendant did not offer another job assignment.
12. By letter dated September 22, 1998, Ray Linder, defendant's Human Resources Manager, advised the plaintiff that she had been released to return to work, but that she had only returned to work on August 31, 1998 and for half a day on September 1, 1998. Mr. Linder further instructed that absence from work without authorization was not allowable, and if plaintiff did not provide a medical note by September 30, 1998, she would be removed from their employ. Plaintiff was considered as terminated effective September 2, 1998.
13. Plaintiff did not seek medical treatment after receiving Mr. Linder's letter, as the treating physician had released her.
14. In January of 1999, the therapist recommended that plaintiff receive a second opinion from Dr. Lacy Thornburg, an orthopedic surgeon. On June 27, 1999, Dr. Thornburg reviewed plaintiff's treatment records and examined her extremities. He found plaintiff to have residual or recurrent carpal tunnel syndrome and compression of the ulnar nerve at the left elbow into the shoulder. He recommended further evaluation and possible carpal tunnel revision surgery.
15. The claims adjuster returned plaintiff to Dr. Andrea Stutesman for an independent evaluation on August 12, 1999. Nerve studies revealed sensory and motor dysfunction with wrist and median nerve injuries. An additional two weeks of therapy was ordered. Dr. Stutesman restricted plaintiff to avoid repetitive pinching, no lifting over five pounds, and limited overhead work.
16. On February 15, 1999, plaintiff sought treatment with family doctor Dr. Charles Baker in Linville, who referred her to neurologist Dr. Jeff Crittenden. Dr. Baker also rendered treatment for plaintiff's depression which developed after the chronic pain syndrome.
17. Plaintiff has not reached maximum medical improvement as a result of the bilateral arm conditions or the shoulder condition. She would benefit from additional treatment, including treatment for the chronic pain and resulting depression.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiff's compensable occupational disease, the plaintiff is entitled to temporary total disability compensation at the rate of $273.66 per week for the period from September 2, 1998 and continuing until further Order of the Commission. N.C. Gen. Stat. §97-29.
2. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including treatment for the chronic shoulder pain. Defendant is not responsible for paying for treatment for plaintiff's depression. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to the plaintiff at the rate of $273.66 per week for the period from September 2, 1998 and continuing until further Order of the Industrial Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
3. Defendant shall pay plaintiff interest at the rate of eight (8%) percent on the final award or unpaid portion thereof from the date of the initial hearing of the claim. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay medical expenses, excluding treatment for depression, incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. As the plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing before the Deputy Commissioner from the Commission to resolve this matter.
6. Defendant shall pay the costs.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER